Thomas J. Salerno (AZ Bar No. 007492) thomas.salerno@ssd.com
Jordan A. Kroop (AZ Bar No. 018825) jordan.kroop@ssd.com
Kelly Singer (AZ Bar No. 022024) kelly.singer@ssd.com
Bradley A. Cosman (AZ Bar No. 026223) bradley.cosman@ssd.com
**SQUIRE, SANDERS & DEMPSEY (US) LLP**
One East Washington Street, Suite 2700
Phoenix, Arizona 85004
(602) 528-4000

Proposed Counsel to Debtor-In-Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>77 McD L.L.C.<br><br>Debtor. | Case No. 2:11-bk-04239-CGC<br><br>Chapter 11<br><br>**OMNIBUS STATEMENT OF FACTS IN SUPPORT OF CHAPTER 11 PETITION AND FIRST-DAY MOTIONS**<br><br>**Date of Hearing: TBD**<br>**Time of Hearing: TBD** |

77 McD L.L.C., debtor-in-possession in the above-captioned chapter 11 case, submits this Omnibus Statement of Facts in support of all first-day motions and other specified pleadings filed in this case.

### DESCRIPTION OF THE DEBTOR

**Jurisdiction And Venue**

1. The Debtor filed its voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101-1532 (the "**Bankruptcy Code**") on February 22, 2011 (the "**Petition Date**").

2. The Debtor continues to operate its businesses and possess its properties as a debtor-in-possession in accordance with Bankruptcy Code §§ 1107 and 1108.

3. This Court has jurisdiction over this chapter 11 proceeding under 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

4. The Debtor is a limited liability company that owns and operates two apartment buildings in the Phoenix area. Accordingly, the venue of this chapter 11 case is proper in this District under 28 U.S.C. §§ 1408 and 1409.

**Background Facts Concerning The Debtor And Its Properties**

5. The Debtor's primary business is ownership and management of two urban lifestyle-oriented apartment complexes located in Phoenix, Arizona, commonly referred to as Barossa at the Park ("**Barossa**") and Indigo at the Park ("**Indigo**," and together with Barossa, the "**Properties**"). Barossa is a 273-unit apartment complex located at 7777 W. McDowell Road, Phoenix, Arizona 85035. Indigo is a 306-unit apartment complex located adjacent to Barossa, at 7725 W. McDowell Road, Phoenix, Arizona 85035. Completed in June 2009, the Properties are "Class A" properties that provide residents an impressive list of premium amenities, including 9-foot ceilings, gourmet kitchens, granite countertops, soaking tubs, a 24/7 professional-grade gym, an expansive pool area, and a java bar.

6. Individual units within the Properties range from one to three bedrooms, and the primary target residents are renters seeking an urban lifestyle experience at an affordable price. The Properties' lifestyle-focus and branding support monthly rental rates approximately 20-30% higher than their competitors. Monthly rental rates for the Properties' units range from approximately $750 to $950.

7. The lifestyle-focus of the Properties is enhanced by their location. Located in West Phoenix near the I-10 and Loop 101 freeways, the Properties provide residents with easy access to Westgate City Center and professional and college sports venues, including the

University of Phoenix Stadium, Jobing.com Arena, and multiple Major League Baseball spring training facilities. Nearby Gateway Pavilion also provides shopping, restaurants and movies.

8. As new complexes, the Properties are still in their initial "lease-up" stage. As of the Petition Date, occupancy rates were approximately 68% and 75% for Barossa and Indigo, respectively. Since June 2010, collective occupancy rates for the Properties have fluctuated between 71% and 79%. As the market for rental units continues to improve, the Debtor believes it will approach stabilized occupancy rates of 90% by the end of 2011.

**Ownership And Management Of The Debtor**

9. The Debtor is owned by 14 members. A list of the members and their percentage membership interest is attached to this Omnibus Statement of Facts as Exhibit A. Substantially all the Debtor's operations are managed by two affiliated non-debtor entities, Gray Residential L.L.C. ("**Gray Residential**"), and Gray Services L.L.C. ("**Gray Services**").

10. Gray Residential serves as the Debtor's property manager, maintaining the Properties' common areas and providing tenant maintenance services. As the manager, Gray Residential is also responsible for leasing and oversees rent collection and other tenant-related issues. The relationship between the Debtor and Gray Residential is governed by a standard management agreement common in the apartment industry (the "**Management Agreement**"), under which Gray Residential receives a management fee equal to 4.5% of the Debtor's revenues for each Property in exchange for its management services. There is one Management Agreement for each of the Properties. Gray Residential's management fee typically ranges from a total of $13,000 to $16,000 per month for both Properties together.

11. Gray Services, on the other hand, employs all of the employees that operate the Debtor's businesses. The Debtor in fact has no employees of its own and Gray Services pays all

employee wages, benefits, withholding taxes, and workers' compensation insurance expenses. The Debtor reimburses Gray Services for these services monthly. Gray Services passes through such employee-related costs and benefits at no mark-up; the monthly cost is approximately $64,000 for both Properties together.

## CAPITAL STRUCTURE

**The Secured Debt Against The Property**

12. The Debtor financed construction of the Properties through a <u>Construction Loan Agreement</u>, between the Debtor and Bank of America, N.A. ("**BofA**"), dated July 31, 2007, for the maximum principal amount of $46,791,600.00 (as modified, extended, supplemented, restated, or renewed, the "**Loan Agreement**"). The Loan Agreement is evidenced by the <u>Deed of Trust Note</u> also dated July 31, 2007, executed by the Debtor and payable to BofA (the "**Note**"). The Note is secured by a <u>Deed of Trust, Assignment of Rents and Leases, Security Agreement and Financing Statement</u>, recorded with the Maricopa County Recorder on July 31, 2007 Doc. No. 2007865958 (the "**Deed of Trust**," and together with the Loan Agreement and the Note, the "**Loan Documents**"). Under the Deed of Trust, BofA was essentially granted a security interest in substantially all the Debtor's assets.

13. The Loan Documents matured on August 1, 2010. As of the Petition Date, the total outstanding principal balance under the Loan Documents is approximately $45,027,904. Of this amount, $21,767,663 is attributable to Indigo and $23,260,241 is attributable to Barossa. In addition, there is approximately $600,000 of total accrued and unpaid interest under the Loan Documents as of the Petition Date.

14. The Loan Documents are guaranteed by GDG Enterprises L.L.C., and Gray Meyer Fannin L.L.C., under a guaranty agreement dated July 31, 2007.

**Outstanding Taxes**

15.     The Debtor does not have any outstanding property taxes due at this time. Property taxes for the second half of 2010 in the amount of approximately $127,209 are due on May 2, 2011.

**Unsecured Creditors**

16.     The Debtor has approximately $33,000 in general unsecured claims. These primarily comprise various vendors and service providers related to the operation and maintenance of the Properties that are not paid by Gray Residential or Gray Services.

## EVENTS PRECIPITATING CHAPTER 11 FILING

17.     Several factors have led to the filing of this case. Like nearly every other company involved in the development of real estate, the Debtor has suffered from the well-documented and unprecedented collapse of the commercial real estate finance markets and the crisis in the credit markets. The reasons for the collapse of the market for financing commercial real estate are complex, but the problems bear no relation to the Debtor's operating performance of the Properties.

18.     The Properties are still in their initial "lease-up" phases, but are nevertheless generating significant cash flow from operations. Specifically, Indigo and Barossa are generating approximately $80,000 to $100,000 per month, collectively, in cash flow from operations, which excludes any debt service obligations under the Loan Documents.

19.     Had it met certain non-monetary covenants set forth in the Loan Documents, the Debtor would have obtained an automatic extension of the maturity date. The Debtor has pursued multiple strategies for a consensual restructuring or modification of the Loan Documents with BofA. Initially, the Debtor attempted to negotiate terms of a forbearance agreement with

BofA; but despite efforts to reach agreement on feasible forbearance terms, BofA abruptly ceased negotiations on a forbearance agreement in early November 2010 and eventually stopped all negotiations in early January 2011.[1]

20. The Debtor has also been marketing the Properties. Through its marketing efforts, the Debtor obtained and presented to BofA on January 11, 2011, a short-sale offer for the Properties in the amount of $40.0 million (the "**Offer**"). The Offer, which reflected a mere estimated 10% discount from the total outstanding debt, was free of contingencies and proposed a $500,000 non-refundable deposit. BofA rejected the Offer.

21. On February 11, 2011, consistent with rejection of the Offer and abandonment of consensual restructuring negotiations, and despite the fact that the Properties are performing quite well, BofA instigated proceedings in Maricopa County Superior Court (the "**State Court**") for the appointment of a receiver for the Properties. *See Verified Complaint For Appointment of Receiver and Breach of Contract* dated February 11, 2011 (Case No. CV2011-003672) (the "**Receivership Action**"). A hearing on the Complaint was scheduled before the State Court at 9:15 a.m. on February 22, 2011.

22. The Debtor, therefore, was forced to commence this case to stay the Receivership Action and preserve the estate's interests in the Properties for the benefit of all parties.

23. In this regard, the Debtor believes the market for commercial real estate financing may be stabilizing and has begun to show signs of a turnaround. Additionally, the Properties are generating significant cash flow, excluding debt service obligations. These factors, along with the stabilization of the real estate market, will allow the Debtor to obtain additional capital or refinance its secured indebtedness. The Debtor may also have the ability to fund a 100% payout

---

[1] On information and belief, BofA began marketing the Note for sale after it terminated forbearance agreement negotiations.

stand-alone reorganization plan at reasonable market interest rates.

Dated this 22nd day of February, 2011.

**SQUIRE, SANDERS & DEMPSEY (US) LLP**

By: */s/ Kelly Singer*
Thomas J. Salerno
Jordan A. Kroop
Kelly Singer
Bradley A. Cosman
One East Washington Street, Suite 2700
Phoenix, Arizona 85004
(602) 528-4000

Proposed Counsel to Debtor-in-Possession

# EXHIBIT A

## List of Debtor's Members

| Member | Membership Interest Percentage |
| --- | --- |
| Arizona Land Investors | 12.78% |
| Bingham Development | 5.27% |
| Cataract Investments | 1.10% |
| Clow MV LLC | 0.55% |
| GDG Enterprises, LLC | 67.31% |
| Genfive Ventures III, LLC | 2.61% |
| Geoffrey A. Bingham | 0.23% |
| Goodsijn I, LLP | 1.72% |
| Josh & Olga Grimes | 2.20% |
| P.R. Fannin Investments, Inc. | 0.55% |
| Peterson Trust | 0.55% |
| Robert Harrison | 3.41% |
| Shaurette Arizona Investments II, LLC | 0.69% |
| ST Parady Investments | 1.03% |